IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MIRANDA WILLHITE-WILLIAMS                                             PLAINTIFF


         v.                              Civil No. 2:14-cv-2156


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                        DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Miranda Willhite-Williams, brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a decision of the Commissioner of the Social Security Administration

("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB")

and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social

Security Act ("Act").  The Parties have consented to the jurisdiction of a magistrate judge to conduct

any and all proceedings in this case, including conducting the trial, ordering the entry of a final

judgment, and conducting all post-judgment proceedings.  (ECF No. 8).[1]  Pursuant to this authority,

the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

I.       **Background:**

Plaintiff protectively filed her application for DIB and SSI on October 4, 2011, alleging an

onset date of February 15, 2010, due to "major depression, anxiety and panic disorders, and nerve

disorder." (Tr. 15, 253, 257).  For DIB purposes, Plaintiff retained insured status through September

---

[1] The docket numbers for this case are referenced by the designation "ECF No. __."  The transcript pages
for this case are referenced by the designation "Tr."

30, 2010.  (Tr. 17, Finding 1).  Plaintiff's application was denied initially and on reconsideration.

An administrative hearing was held on December 19, 2012, at which Plaintiff appeared with counsel

and testified.  (Tr. 43-67).  A supplemental hearing was held on February 27, 2013, at which Plaintiff

appeared with counsel and a vocational expert ("VE") was present and testified.  (Tr. 68-76).

On June 7, 2013, the Administrative Law Judge ("ALJ") entered an unfavorable decision.

(Tr. 15-24).  In this decision, the ALJ determined Plaintiff had the following severe impairments:

"chronic back pain; major depressive disorder, not otherwise specified ("NOS"); anxiety disorder,

NOS; social anxiety disorder; and panic disorder."  (Tr. 17, Finding 3).  After reviewing all of the

evidence presented, however, the ALJ determined Plaintiff's impairments did not meet or equal the

level of severity of any impairment listing.  (Tr. 18-19, Finding 4).

The ALJ next evaluated Plaintiff's subjective complaints and determined her RFC.  (Tr. 19-

22).  The ALJ first evaluated Plaintiff's subjective complaints and found she was not entirely

credible.  (Tr. 19-21).  The ALJ then found Plaintiff retained the residual functional capacity

("RFC") to perform light work except:

> She can only occasionally climb ramps and stairs and can never climb ladders, ropers, or
> scaffolds.  She can only occasionally balance, stoop, kneel, crouch, and crawl.  She can only
> occasionally perform overhead work/overhead reaching. She must avoid concentrated
> exposure to hazards including no driving as part of work.  She is able to perform work where
> interpersonal contact with co-workers and supervisors is incidental to the work performed,
> there is no contact with the general public, the complexity of tasks is learned and performed
> by rote, with few variables and use of little judgment, and the supervision required is simple,
> direct and concrete.

(T. 19, Finding 5).

With the help of the VE, the ALJ determined Plaintiff could perform her past relevant work

("PRW") as a cardboard cutter.  (Tr. 22-23, Finding 6).  The ALJ also determined Plaintiff retained

the capacity to perform the requirements of the representative occupations of machine tender and

assembler.  (Tr. 22-24,  Finding 6).  The ALJ then concluded Plaintiff was not disabled.  (Tr. 24,

Finding 7).

On August 5, 2013, Plaintiff requested the Appeals Council review the ALJ's unfavorable

decision, which denied the request on May 7,  2014.  (Tr. 1-3).  On July 10, 2014, Plaintiff filed the

present appeal.  (ECF No. 1).  The Parties consented to the jurisdiction of this Court on July 29,

2014.  (ECF No. 8).  Both Parties have filed appeal briefs, and the case is ready for decision.  (ECF

Nos. 11, 12).

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance, but it is enough a reasonable mind would

find it adequate to support the Commissioner's decision.  "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider evidence

in the record that fairly detracts from that decision."  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir.

2007).  The ALJ's decision must be affirmed if the record contains substantial evidence to support

it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence

in the record to support the Commissioner's decision, the Court may not reverse it simply because

substantial evidence exists in the record to support a contrary outcome, or because the Court would

have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must

be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether a claimant suffers from a disability, the Commissioner uses a five-step

sequential evaluation.  She determines: (1) whether the claimant is presently engaged in a substantial

gainful activity; (2) whether the claimant has a severe impairment that significantly limits the

claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has

an impairment that meets or equals a presumptively disabling impairment listed in the regulations

(if so, the claimant is disabled without regard to age, education, and work experience); (4) whether

the claimant has the RFC to perform her PRW; and (5) if the claimant cannot perform the past work,

the burden shifts to the Commissioner to prove there are other jobs in the national economy the

claimant can perform.  20 C.F.R. §§ 404.1520(a)-(f)*; Cox*, 160 F.3d at 1206.  The fact finder only

considers Plaintiff's age, education, and work experience in light of her RFC if the final stage of this

analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920.

III.    <u>Discussion</u>:

Plaintiff argues the ALJ failed to: (1) include degenerative disc disease of the neck and spine

as a severe impairment at Step Two, (2) erred in determining her credibility, (3) did not give

appropriate weight to the opinion of a treating nurse, and (4) erred in determining she could perform

work at Step Five.  (ECF No. 11 at 13).

**A. Severe Impairments**

Plaintiff believes the ALJ should have included her neck and spine condition as a severe

impairment at Step Two because a December 2011 CT and MRI scan of her lumbar spine found

early degenerative changes and facet arthropy at the L2-3 to L4-5 levels, and a CT of her neck

revealed an osteophyte formation. (ECF No. 11 at 17). The ALJ determined Plaintiff's chronic back pain was a severe impairment, but concluded her neck spasms were minor "because her exam showed normal alignment and mobility with no tenderness to palpation" at the only visit where she complained of neck pain. (Tr. 17, 20).

A claimant suffers from a severe impairment if that impairment is more than slight and if that impairment impacts the claimant's ability to do her basic work activities. *See Householder v. Bowen*, 861 F.2d 191, 192 n.1 (8th Cir. 1988). The Supreme Court has also held that a claimant does not suffer from a severe impairment where the claimant only suffers from "slight abnormalities that do not significantly limit any 'basic work activity.'" *See Bowen v. Yuckert*, 482 U.S. 137, (1987) (O'Connor, S., concurring); *see also Brown v. Bowen*, 827 F.2d 311, 311-12 (8th Cir. 1987) (adopting Justice O'Connor's language from *Bowen v. Yuckert*).

The standard for determining whether a claimant suffers from a severe impairment is a low or de minimis standard. *See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007). If the ALJ errs by finding a severe impairment is not severe, the ALJ's disability determination must be reversed and remanded. *Id.*

Plaintiff did not allege a neck or spine condition as a basis for disability or discuss it at her hearings. (Tr. 56, 257). She also did not indicate she had any limitations attributable to a neck or spine condition, such as postural, reaching, or manipulative problems on her Function Reports. (Tr. 250, 272). Plaintiff's failure to allege a neck or spine condition was a severe impairment at the application or hearing stages is significant. *See Dunahoo v Apfel*, 241 F. 3d 1033, 1039 (8th Cir. 2001).

-5-

The ALJ addressed Plaintiff's neck exams in combination with her back condition, CT scan, and MRI scan.  (Tr. 20).  The record indicates her neck condition was not severe.  In June 2010, Plaintiff was examined by Dr. Blake Bryant, who noted she did not have any neck, joint, or muscle pain.  (Tr. 620-622).   In April 2011, Plaintiff returned to Dr. Bryant with new cough and throat issues, but her neck exam was normal.  (Tr. 631-633).  On June 30, 2011, Plaintiff saw Dr. Bryant and complained she had debilitating neck spasms.  (Tr. 634-637).  Dr. Bryant examined her neck and found she had a "small area of induration on the right side without fluctuance … some asymmetry, most noticeable when patient swallows," normal alignment, and normal mobility.  (Tr. 635).  Plaintiff was prescribed Norflex and Prilosec.  (Tr. 635).  Plaintiff saw Dr. Bryant again on July 20, 2011, for a sore throat, but her exam was otherwise normal.  (Tr. 638).

Plaintiff sought treatment for a UTI, dysuria, and low back pain with Dr. Philip Elangwa on December 5, 2011.  (Tr. 772).  At a follow-up with Dr. Elangwa on December 14, 2011, Plaintiff described her condition as mild low back pain relieved by Aleve, and stated she felt "her back pain had improved … it felt almost cleared up."  (Tr. 771).  On January 3, 2011, Plaintiff met with Dr. Elangwa again and complained of continued lower back pain.  (Tr. 770).  An MRI of Plaintiff's lumbar spine revealed Plaintiff had mild facet arthropathy at the L2-L3 to L4-L5 levels, normal vertebral bodies, and no neural compromise.  (Tr. 776).  A CT of Plaintiff's brain and spine showed Plaintiff had normal vertebral bodies, normal disc spaces, no fracture or dislocation, and minimal or early degenerative changes.  (Tr. 860).

While the record included evidence showing Plaintiff's back condition was a severe impairment, no medical evidence indicates her neck or a separate spine condition caused more than minimal functional limitations.  *See* 20 C.F.R. § 416.924(c); *see also Neal v. Barnhart*, 405 F.3d

685, 688 (8th Cir. 2005). The only reference in the record during the relevant time period to a neck condition was a single complaint of neck spasms in June 2011, which appeared to be treated by Norflex.

Accordingly, the Court finds the ALJ's Step Two determination was based on substantial evidence.

**B. Credibility Determination:**

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). The factors to consider are: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *Polaski*, 739 F.2d at 1322.

When discounting a claimant's subjective complaints, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998). The ALJ is not required to discuss each factor as long as the ALJ acknowledges and examines these factors before discounting the claimant's subjective complaints. *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these factors and gives several valid reasons for finding Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's claims solely because the objective medical evidence does not fully support the subjective complaints. *Polaski*, 739 F.2d at 1322.

The ALJ addressed the *Polaski* factors, and identified the following inconsistencies: (1) Plaintiff's significant activity level, which included caring for her children, driving, shopping by herself, and attending her children's school functions; (2) her conservative medical treatment; (3) her noncompliance with prescribed behavioral counseling and failure to seek consistent mental health treatment; and (4) her frequent ER treatment for coughs and colds, although she claimed she preferred not to go to counseling sessions or work because she was agoraphobic. (Tr. 20-22). These were valid reasons for discounting Plaintiff's subjective complaints. *See, e.g., Edwards v. Barnhart*, 314 F.3d 964, 968 (8th Cir. 2003) (stating claimant's failure to pursue regular medical treatment detracted from credibility).

Plaintiff does not contest the ALJ's credibility determination as a whole, but contends, on policy grounds, the ALJ should not have classified her visits to the ER for minor problems as a discrediting because "a claimant seeking disability should never be disbelieved for seeking treatment." (ECF No. 11 at 18-19). Plaintiff has not offered any cases in support of her position. While seeking medical treatment ordinarily enhances a claimant's credibility, Plaintiff's pattern of treatment for routine physical problems magnified the absence of treatment for her mental health problems, and undermined agoraphobia as a reasonable explanation. (Tr. 22). It was permissible for the ALJ to highlight Plaintiff's pattern of treatment for physical problems as inconsistent with her overall claim of disabling mental health problems. *See Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. Mo. 2004), 361 F.3d 1066, 1072 (8th Cir. Mo. 2004))("the ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole.").

Based on the foregoing, the undersigned finds the ALJ's credibility determination was based on substantial evidence.

**C. RFC**

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required

to determine a claimant's RFC.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  This RFC determination must

be based on medical evidence that addresses the claimant's ability to function in the workplace.  *See*

*Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004).  The ALJ should consider "'all the evidence

in the record' in determining the RFC, 'including the medical records, observations of treating

physicians and others, and an individual's own description of her limitations.'" *Id*. (quoting

*Krogmeier v. Barnhart*, 294 F.3d 1019 (8th Cir. 2002).  The Plaintiff has the burden of producing

documents and evidence to support her claimed RFC.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A);

*Cox*, 160 F.3d at 1206.

The ALJ, however, bears the primary responsibility for making the RFC determination and

for ensuring there is "some medical evidence" regarding the claimant's "ability to function in the

workplace" that supports the RFC determination.  *Lauer v. Apfel*, 245 F.3d 700, 703-04 (8th Cir.

2001).  This Court is required to affirm the ALJ's RFC determination if the determination is

supported by substantial evidence on the record as a whole.  *See McKinney v. Apfel*, 228 F.3d 860,

862 (8th Cir. 2000).

Plaintiff challenges the ALJ's RFC determination on only one point.  She believes the

opinion of Nurse M. Kathleen Smith, who submitted a mental RFC on August 31, 2012, was entitled

to great weight because it was consistent with the record, specifically Dr. Terry Efird's mental

consultative evaluation. (ECF No. 11 at 16).  Nurse Smith opined Plaintiff had the mental capacity

to perform unskilled work in most areas, but was unable to "meet the competitive standards" of

"completing a normal workday and workweek without interruptions from psychologically based symptoms." (Tr. 761).

The ALJ addressed Nurse Smith's opinion at the hearing and in the written decision as relevant medical evidence. *See* 20 C.F.R. § 404.1513; SSR 06-3p. The ALJ did not entirely discount the opinion, but gave it "little weight" because it was "not supported by any objective findings in the record." (Tr. 22). The ALJ discharged his duty to consider Nurse Smith's opinion in light of the record as a whole.

The Court notes Nurse Smith's opinion was based on five visits within short time period and Plaintiff abruptly discontinued her medications and treatment because of a pregnancy. (Tr. 748, 759). At Plaintiff's penultimate visit with Nurse Smith in March 2012, Nurse Smith adjusted Plaintiff's medications between Zoloft and Celexa; Klonopin and Xanax; and trazodone and Ambien to find a therapeutic treatment because Plaintiff reported she was having severe financial and family stressors and was not sure what was working. (Tr. 749). At Plaintiff's final visit in April 2012, all medications were discontinued because of Plaintiff's pregnancy, although Nurse Smith advised Plaintiff to continue with behavioral therapy. (Tr. 749). Plaintiff, however, did not continue with counseling. (Tr. 63).

An ALJ may discount an opinion if other medical assessments are supported by superior medical evidence, so long as the ALJ gives good reasons for the weights assigned. *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ permissibly gave less weight to Nurse Smith's opinion based on her short-term treatment relationship with Plaintiff, the lack of treatment data supporting her opinion, and evidence in the record of as a whole. *See Garza v. Barnhart*, 397 F.3d 1087, 1088 (8th Cir. 2005)(stating ALJ appropriately gave

little weight to the opinion of a treating social worker who offered an opinion a year after last seeing

the claimant, did not address treatment records in the opinion, and had only treated claimant for five

months).

The record shows Plaintiff's physical conditions were controlled with over-the-counter pain

medications, responded to conservative treatment, and did not prevent Plaintiff from completing

ordinary daily activities. (Tr. 250, 265-266, 635, 771). Similarly, medications controlled her mental

conditions when she sought treatment. (Tr. 348, 351-353, 358, 359, 365, 515, 546, 549). Plaintiff

reported to her psychiatrist, Dr. Jaymal Patel, Celexa and trazodone treated her mental health

conditions without side effects. (Tr. 348, 358). In September 2010, Plaintiff reported to Dr. Brent

Witherington, a treating psychiatrist, Zoloft, trazodone, and Klonpin treated her conditions, she had

no side effects, no depression, did not have to use trazodone often, had normal energy and appetite

and explained, "the worst part of her condition is 'I just get upset when I am looking for a job ... just

even asking for a job ... some people are just so rude.'" (Tr. 546). Dr. Witherington noted Plaintiff

had good appearance, speech, motor function, affect, mood, thought content, cognition, and insight

at the visit, and encouraged Plaintiff to maintain her behavioral therapy. (Tr. 546). On October 25,

2010, Plaintiff reported to Shannon Garner, her treating social worker, her medications were

effective. (Tr. 549). Conditions controlled by treatment or medications are not disabling. *Brace v.*

*Astrue*, 578 F.3d 882, 885 (8th Cir. 2009).

Plaintiff stopped mental health treatment for significant time periods, and frequently did not

follow through with recommended counseling for unexplained reasons. (Tr. 244, 354, 357, 364-365,

748). For instance, at Plaintiff's one-year assessment, and apparently final visit, with Dr.

Witherington in November 2010, he noted Plaintiff had missed her last two appointments, and

reported her explanation was "I had to miss an appointment ... I think I forgot about it ... I think I was at the attorney's office." (Tr. 559). Plaintiff did not re-establish mental health treatment until August 2011, which she discontinued on April 2, 2012. (Tr. 574, 748). Plaintiff's non-compliance with physician recommendations and infrequent mental health treatment is evidence her conditions are not disabling. *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014).

The opinions of the State's consulting physicians also support the ALJ's conclusions. Dr. Terry Efird performed a consultative mental examination in February 2012, and scored Plaintiff's GAF as 50-60. (Tr. 681-684). He opined Plaintiff could communicate and interact in a reasonably socially adequate manner; could perform basic cognitive tasks required for basic work like activities; had no remarkable problems with persistence; had the mental capacity to persists with tasks if desired; and could complete most tasks with in an adequate time frame. (Tr. 684). Dr. Jonathan Norcross, a State non-examining physician, submitted a physical RFC assessment in April 2012 and opined Plaintiff's physical impairments were non-severe. (Tr. 756). On March 1, 2012, Dr. Sheri Simon, a State non-examining psychiatrist, submitted a mental RFC assessment and opined Plaintiff could perform unskilled work, an opinion affirmed by Dr. Kay Cogbill. (Tr. 714, 751).

Based on the foregoing, the undersigned finds there is substantial evidence to support the ALJ's RFC findings.

**D. Step Five**

At Step Five of a disability determination, the SSA has the burden of establishing a claimant retains the ability to perform other work in the economy. *See Snead v. Barnhart*, 360 F.3d 838, 836 (8th Cir. 2004). The ALJ may meet this burden by either applying the Grids or by relying upon the testimony of a VE. The ALJ may not apply the Grids, and must hear testimony from a VE, where

a claimant's RFC is significantly diminished by a nonexertional limitation.  *See McGeorge v. Barnhart*, 321 F.3d 766, 768-769 (8th Cir. 2003).

> The ALJ posed the following hypothetical question to the VE:

> Assume ... this individual has the RFC to perform light work ... except she can only occasionally climb ramps and stairs, can never climb ladders, ropes or scaffolds, can only occasionally balance stoop, kneel, crouch and crawl, can only occasionally perform overhead work/overhead reaching, and must avoid concentrated exposure to hazards including no driving as part of work.  Assume further the individual is able to perform work where interpersonal contact with co-workers and supervisors is incidental to the work performed, there is no contact with the general public, the complexity of tasks is learned and performed by rote, with few variables and use of little judgment, and the supervision required is simple, direct, and concrete.  (Tr. 334)

In response, the VE testified this person could perform the jobs of Plaintiff's PRW of corner cutter (cardboard) and the representative occupations of machine tender and assembler.  (Tr. 334-335).

> At the second administrative hearing, Plaintiff's counsel posed a modified hypothetical as follows:

> Assume that this individual is moderately limited in a number of areas, and I would like for you to define moderately limited as the individual would be limited to an extent that the limitation would be noticeable to the employer but not so severe in any one area that it would result in termination based only on that limitation.  ... assume that this individual is moderately limited in the ability to maintain attention and concentration for extended periods, sustain an ordinary work routine without supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instruction and respond appropriately to changes in the work settings.  Based on those moderate limitations, would such an individual be capable of the past relevant work of the claimant?  ... Would other work exist that you could identify for such an individual?

(Tr. 71-72).  In response, the VE testified Plaintiff could not perform her PRW or any other work.

(Tr. 72).

> The modified hypothetical question posed by Plaintiff's counsel restated the ALJ's findings

at Step Two.  There is an important distinction, however, between a Step Two Determination of a

severe impairment and the separate determination of a claimant's RFC.  The Step Two determination

looks at the severity of a claimant's impairments in light of the categories in the Listing of Impairments, which includes concentration, persistence, or pace.  20 C.F.R. Part 404, Subpart P, Appx. 1, § 12.00(C)(1)-(4).  The RFC determination requires a more detailed assessment of a claimant's abilities, such as the ability to understand, remember, and carry out instructions; to respond appropriately to supervision, coworkers, and work pressures in a work setting; to use judgment in making work-related decisions; and to deal with changes in a routine work setting.  20 C.F.R. §§ 404.1545(c); 404.1569a(c); SSR 96-8p.  The hypothetical question must reflect the limitations determined at Step Two, but it is not required to be phrased identically to the Step Two findings.  It was not necessary for the hypothetical posed by the ALJ to mention each impairment and only needed to include an impairment's concrete consequences. *See England v. Astrue*, 490 F.3d 1017, 1023-24 (8th Cir. 2007).

VE testimony, in response to a hypothetical question, is substantial evidence if the hypothetical sets forth the credible impairments with reasonable precision. *See Starr v. Sullivan*, 981 F.2d 1006 (8th Cir. 1992).  The ALJ must only include in the hypothetical the impairments which the ALJ actually finds credible, and not those which he rejects, assuming his findings are supported by substantial evidence.  *See Onstad v. Shalala*, 999 F.2d 1232 (8th Cir. 1993).

Having thoroughly reviewed the hearing transcript and interrogatories, along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See e.g., Rappoport v. Sullivan*, 942 F.2d 1320, 1322 (8th Cir. 1991).  The VE stated jobs existed in both the national and regional economy for Plaintiff's vocational profile.  Such testimony, based

on hypothetical questions consistent with the record, constitutes substantial evidence. *See Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

**IV.** **Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**Dated this 22ⁿᵈ day of April, 2015.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE